In the Matter of the Claim of Sadie Centonze, Appellant. Edward Corsi, as Industrial Commissioner, Respondent.

Third Department, May 10, 1956.

*Wilbur Daniels* and *Morris P. Glushien* for appellant.

*Jacob K. Javits, Attorney-General* (*Francis R. Curran* and *James O. Moore, Jr.,* of counsel), for respondent.

BERGAN, J. Claimant is a sewing machine operator. For several years she had been employed sewing linings of coats. In March, 1954, she became unemployed due to lack of work and was paid unemployment insurance benefits. On March 25th the employment service referred her to a manufacturer of coats, and she reported for work the next morning at eight-thirty o'clock.

The work was piecework. She worked until lunch time and then quit the job because her experience led her to think that she would earn about $50 a week instead of $75 a week, which she had earned with her previous employer.

The unemployment insurance referee and the Unemployment Insurance Appeal Board have both held as a matter of law that claimant in these circumstances " refused " employment and is disqualified for benefits within the provisions of subdivision 2 of section 593 of the Unemployment Insurance Law (Labor Law, art. 18). The claimant on appeal here contends that she did not refuse employment; but rather that she accepted the employment and then quit it without good cause under paragraph (c) of subdivision 1 of the same section.

The difference in consequence to the claimant whether she comes within one, rather than the other, of these subdivisions of section 593 is quite substantial. If it is held that her " separation was without good cause " under paragraph (c) of subdivision 1 the statute directs that " no benefits shall be payable to such claimant, nor shall he be credited with serving any part of the waiting period until forty-two consecutive calendar days have elapsed after his registration for benefits subsequent to such voluntary leaving ".

But for a refusal to accept employment, the penalty is far more drastic. The statute (subd. 2) directs that " No benefits shall be payable to any claimant who without good cause refuses to accept an offer of employment for which he is reasonably fitted by training and experience ". The Attorney-General's brief, with some justice, describes this subdivision as effecting a disqualification " for an indefinite period for refusing an offer of employment without good cause ".

The factual findings of the referee are that on March 26th the claimant " obtained employment on a piecework basis " and that " She was being paid " the union rate. It is further found that she " started work " at 8:30 A.M.; that at about 11:00 A.M. " she decided to quit because she was dissatisfied with her earnings "; that she " continued working until about noon and then quit ".

These factual findings led him to the opinion on the law that by "quitting her job" before going to lunch claimant is "deemed to have refused the employment" within the meaning of the statute. We are bound by the facts as found by the referee and affirmed by the appeal board; but we are not bound, of course, to adopt their construction of the statute as applied to those facts.

The Attorney-General on behalf of the Industrial Commissioner argues for affirmance of the legal conclusion of the board and referee as though they had found as a fact that claimant had "refused employment". But the actual findings of fact as made, and as they are to be seen without reference to the legal conclusions of the referee, seem to us to point in a different direction.

It is expressly found that claimant had "obtained employment"; not that she refused it. It was found that she was "being paid" for the work and that she "started" to "work" for the employer and that she "continued working" until noon. Unless it can be held that duration of employment is the crucial test of whether or not it has been accepted, these seem to us to be unequivocal findings that claimant did not refuse, but rather accepted, employment. Whether a job is kept a full day instead of a half day or a week instead of a day or a month instead of a week is not an automatically safe test of whether an offer of a job is refused within the statute.

The feasible and sensible test is whether, when a job is physically taken, it is accepted in good faith or whether its acceptance is merely a mask for refusal. If automatic time periods are applied they must necessarily be fixed at some arbitrary point, in less than the duration of which leaving employment would be treated as not leaving it, but refusing it.

Here the good faith of the claimant in taking the work is conceded on the record. Mr. Goodman, claims examiner appearing for the Industrial Commissioner before the referee, raised a question as to the admissibility of proof offered by claimant's counsel on the question of good faith. Her counsel, Mr. Friedman, made this statement, among others: "She accepted the job in good faith and it was only later on, she decided to leave."

Mr. Goodman said: "May I state for the record there is no doubt that the claimant accepted the job in good faith. We hold no such contention; so therefore let Mr. Friedman proceed from thenceon on the basis that it was accepted in good faith." The referee made the comment that the commissioner had now made the matter clear and suggested to counsel for claimant that he accept this concession "as a premise".

526

The commissioner hedges this in somewhat in his brief in this court. He says here that "There is no question that claimant went to the plant of the employer in good faith", which is quite a different thing. The commissioner's brief argues that the referee and the board found that "she refused employment".

We do not read their decision this way. They found, on the contrary, that she "obtained employment", but that after having worked at it a short time she left it and her leaving is "deemed" by them to have been a refusal.

In light of the concession of acceptance of employment in good faith, there is no basis in this record for the conclusion of law by the board and referee that the fact of acceptance, as found, must be treated in law as a refusal. The statute imposes no such consequence on a time sequence once employment has been accepted in good faith.

The determination of the Unemployment Insurance Appeal Board should be reversed and the claim remitted to the Industrial Commissioner for further consideration, with costs to appellant against the Industrial Commissioner.

FOSTER, P. J., COON, HALPERN and ZELLER, JJ., concur.

Determination of the Unemployment Insurance Appeal Board reversed and the claim remitted to the Industrial Commissioner for further consideration, with costs to appellant against the Industrial Commissioner.